## GEO. K. BOUTELLE, Trustee, *vs.* THE CITY SAVINGS BANK.

A testator, by his will executed in A. D. 1801, gave certain realty to his five grandchildren without words of inheritance.   By statute then in force, they took as tenants in common.

*Held*, from indications of intention found in other parts of the will, that the grandchildren took estates in fee simple.

A testatrix by will gave an undivided half of her realty to B. in trust for M., a daughter of the testatrix, during life, with remainder to the daughters of M. when they attained majority, and provided, " If it should appear desirable, from any cause that may arise, that my real estate had better be sold, and the avails thereof invested in some good stocks, or on mortgage, I authorize my executors so to do, or the survivor of them, as executor or trustees, and that the same may be done with the last named undivided half while held in trust, and to appropriate the use and income thereof as hereinbefore directed, confiding in the discretion of my said executors and trustees for such contingency."

*Held*, that the power of sale was given to the trustee for the time being, and hence to a successor in trust of B.

BILL IN EQUITY for specific performance. Heard on bill, answer, and an agreed statement of facts.

*July* 16, 1892. STINESS, J. The complainant seeks the specific performance of a contract for the sale of land. He is trustee under the will of Jane Keeley, who took the estate in question under the will of her grandfather, Jacob Whitman, and as such trustee the complainant made the contract of sale. The respondent objects to the title proposed to be conveyed upon two grounds: *first*, that Jane Keeley took under said will only a life estate, and not an estate in fee simple; and, *second*, that the complainant, not being one of the original trustees under the will of Jane Keeley, has not the power of sale which he proposes to exercise. The will of Jacob Whitman gave to five grandchildren, among whom was Jane Whitman, afterwards Jane Keeley, " the 40 foot lot of land on which the Asa Ames house and store now stands," without words of inheritance. The will was prior to our statute, Gen. Stat. R. I. cap. 171, § 5, providing that such a devise should be construed to convey a fee, unless a contrary intention appears, and the question is, whether, under the will, the interest which Jane Keeley took was for life or in fee. Upon one side it is contended that the legal effect of the words, without more, is to give only a life estate, which is conceded; and on the other side it is contended that the intention of the testator, to be gathered from the will, was to give a fee. We have, therefore, only to examine the will for the purpose of ascertaining the testator's intent, since, as stated in *Waterman* v. *Greene*, 12 R. I. 483, " it is well settled that words of inheritance are not necessary in a will to pass a fee, if an intent to pass it is otherwise evinced."

The statute of England, 1 Vict. cap. 26, § 28, construing a devise like this to be a fee unless a contrary intention appears, which has been generally adopted in this country, and from which our statute is taken, rests upon the fact that, as stated in Jarman on Wills, 5th Amer. ed. vol. 3, p. 21, " according to the popular notions, the gift of any subject simply comprehends all the interest therein." While in this case the statute cannot be applied, the well-recognized fact upon which the statute is founded may properly be taken account of in considering the testator's intent. The will, executed in 1801, gave the lot in question to the grandchil-

dren of one family, as tenants in common, there being no words of joint tenancy or survivorship.  See Digest of 1798, p. 272, § 8. Evidently that estate was intended for that family, and it is hardly presumable that the testator intended that his heirs generally should come in as the grandchildren named should die.  In preceding clauses of the will, the testator gave his homestead estate to his widow " during her natural life ; " and the same estate to his son, Jacob Whitman, Jun., " which he is to have possession of at the death of his mother."  The carving out of a life estate, *totidem verbis*, and giving the estate afterwards to his son, clearly indicates a remainder in fee.  *Plimpton* v. *Plimpton*, 12 Cush. 458; *French* v. *McIlhenny*, 2 Binney, 13.  But words of inheritance are also lacking in this devise.  Having just made a devise for life, it is most natural to suppose that, if he had intended to devise only a life estate to the others named, he would have repeated the expression.  The defendant cites to the contrary of this presumption Jarman on Wills, 5th Am. ed. vol. 3, p. 21, and Redfield on Wills, 2d ed. vol. 2, p. 321.  Both these writers refer for authority to *Awse* v. *Melhuish*, 1 Bro. C. C. 519; and *Right dem. Compton* v. *Compton*, 9 East, 267.  In the first case the remainder was expressly for the joint lives of the remainder-men named, and consequently the survivor took an estate for life only, the remainder in fee going to the heir at law, to whom an estate for life had already been given.  In the latter case the testator devised all his lands to his son for life, with specific remainders to grandchildren so long as they should remain single, but upon marriage an annuity only. Lord Ellenborough held that this provision prevented the inference, which otherwise would arise, that the testator meant that the grandchildren should take the whole interest in the several parts respectively devised to them.  These cases are quite different from the case at bar.  The residuary clause of the will before us says : " The remaining part of my estate I order equally divided among my lawful heirs agreeable to the statute of the State."  It is agreed that the testator had other lands than those specifically devised. The words " remaining part of estate " throw some light, though it may be feeble, upon the preceding devises.  They indicate his conception that he had already devised a part of his estate, and the remaining part, not specifically devised, was to go to his heirs.

Had he used the word " estate " in connection with the devise in question, it would have carried all the estate he had in the property designated. *Waterman* v. *Greene*, 12 R. I. 483 ; *Morris* v. *Potter*, 10 R. I. 58. But does not the use of the word " estate," with reference to the remainder of his property, imply that he had given his " estate " in that which was specifically devised ? Although it is by no means a conclusive inference, it is both possible and natural, and, from this and the considerations already stated, we think the testator evinced his intention to devise a fee to the grandchildren named in the clause of the will in question.

We are somewhat relieved from compunctious doubt in this case by the agreed fact that the construction we have given to this will is that which has been adopted and acted upon by those interested in the estate for nearly a century.

The next objection is to the power of the trustee under the will of Jane Keeley to make sale of the property. Mrs. Keeley took, under the will of Jacob Whitman, as we have construed it, an undivided fifth of the estate in question in fee. By her will she gave one undivided half of her real estate, which includes an undivided tenth part of the lot in question, to William M. Bailey in trust for the benefit of her daughter, Mary K. Boutelle, during her life, and after death to her children when they reach the age of twenty-one. The seventh clause of her will is follows : " If it should appear desirable, from any cause that may arise, that my real estate had better be sold, and the avails thereof invested in some good stocks, or on mortgage, I authorize my executors so to do, or the survivor of them, as executor or trustees, and that the same may be done with the last named undivided· half while held in trust, and to appropriate the use and income thereof as hereinbefore directed, confiding in the discretion of my said executors and trustees for such contingency." In May, 1889, William M. Bailey resigned the said trust, and the complainant was appointed trustee in his place by decree of this court. The question is, whether the new trustee succeeded to the power of sale. In Lewin on Trusts, *608, cited in *Bailey* v. *Burges*, 10 R. I. 422, 425, as p. 533, it is said that it seems that the appointment of new trustees by the court would not, but for recent acts, communicate arbitrary or special discretionary powers, unless they were expressly or in fair con-

struction limited to the trustees for the time being. *Bartley* v. *Bartley*, 3 Drew. 384; *Brassey* v. *Chalmers*, 4 De G., M. & G. 528; *Byam* v. *Byam*, 19 Beav. 58, 66. In this case we think the power is annexed to the office, and not to the person named as trustee in his individual character. The power is given to trustees, in the plural, as though the testatrix had in mind other trustees as successors. Moreover it is to continue while the property is " held in trust." This is equivalent to giving it to the trustees for the time being, and so within the rule of the cases cited above.

Our conclusion is, that the complainant as trustee had the power to convey an interest in fee, and that the contract, therefore, should be performed.

*Joseph C. Ely*, for complainants.
*George A. Jepherson*, for respondent.